**DRAFT - CONFIDENTIAL**

Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER TAYLOR, | Case No._____ |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| GLU MOBILE INC., NICK EARL, DARLA ANDERSON, ERIC R. BALL, GREG BRANDEAU, NICCOLO M. DE MASI, BEN FEDER, ANN MATHER, HANY M. NADA, BENJAMIN T. SMITH, IV, and GABRIELLE TOLEDANO, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Christopher Taylor ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Glu Mobile Inc. ("Glu" or the "Company") and the

- 1 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Glu will be acquired by Electronic Arts Inc. ("Electronic Arts") through its wholly-owned subsidiary Giants Acquisition Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On February 8, 2021, Glu and Electronic Arts issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated February 8, 2021 (the "Merger Agreement") to sell Glu to Electronic Arts.  Under the terms of the Merger Agreement, each Glu stockholder will receive $12.50 in cash for each share of Glu common stock they own (the "Merger Consideration").  The Proposed Transaction is valued at approximately $2.1 billion.

3. On March 25, 2021, Glu filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Glu stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and (ii) potential conflicts of interest faced by the Company's additional financial advisor, UBS Securities, LLC ("UBS").  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Glu's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction.  Plaintiff seeks to

enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. GLU's headquarters are located in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Glu.

9. Defendant Glu is a Delaware corporation with its principal executive offices located at 875 Howard Street, Suite 100, San Francisco, California 94103. Glu is a leading developer and publisher of mobile games. Glu's common stock trades on the NASDAQ Global Select Market under the ticker symbol "GLUU."

10. Defendant Nick Earl ("Earl") has been President, Chief Executive Officer ("CEO") and a director of the Company since 2016.

11. Defendant Darla Anderson has been a director of the Company since 2019.

12. Defendant Eric R. Ball has been a director of the Company since 2013.

13. Defendant Greg Brandeau has been a director of the Company since 2015.

14. Defendant Niccolo M. de Masi has been a director of the Company since 2010.

15. Defendant Ben Feder has been a director of the Company since 2017.

16. Defendant Ann Mather served as a director of the Company from 2005 until February 10, 2021.

17. Defendant Hany M. Nada has been a director of the Company since 2005.

18. Defendant Benjamin T. Smith, IV has been a director of the Company since 2010 and Lead Independent Director since 2016.

19. Defendant Gabrielle Toledano has been a director of the Company since December 2017.

20. Defendants identified in paragraphs 10-19 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

21. Electronic Arts is a Delaware corporation, with its principal executive offices located at 209 Redwood Shores Parkway, Redwood City, California 94065. It is a global leader in digital interactive entertainment. Electronic Arts' common stock trades on the NASDAQ Global Select Market under the ticker symbol "EA."

22. Merger Sub is a Delaware corporation and wholly owned subsidiary of Electronic Arts.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

23. Glu develops, publishes, and markets a portfolio of free-to-play mobile games designed to appeal to a broad cross section of users who download and make purchases within its

games through direct-to-consumer digital storefronts, such as the Apple App Store, Google Play Store, and others.

24. The Company has a portfolio of games based on its own intellectual property such as *Cooking Dash*, *Covet Fashion*, *Deer Hunter*, *Design Home*, and *Diner DASH Adventures*, as well as games based on or significantly incorporating third party licensed brands including *Disney Sorcerer's Arena, Kim Kardashian: Hollywood*, the *MLB Tap Sports Baseball* franchises and *Restaurant Dash with Gordon Ramsay*.

25. On February 8, 2021, Glu announced its fourth quarter and full year 2020 financial results, reporting for the fourth quarter: (i) revenue of $141.4 million, up 25% year over year; (ii) net bookings of $124.8 million for the quarter, up 15% year over year; (iii) GAAP net income of $23.9 million; and (iv) free cash flow of $46.2 million. For the full year 2020, the Company reported: (i) revenue of $540.5 million, up 31% from the previous year; (ii) record bookings of $560.6 million, up 32% year over year; and (iii) free cash flow of $69.0 million, up 132% year over year. Commenting on the Company's performance, defendant Earl stated:

> Our fourth quarter results capped off another strong year for Glu. The performance of our Growth Games and the resurgence of Kim Kardashian: Hollywood coupled with a strong contribution from the title we launched during the year, Disney Sorcerer's Arena, drove a 32% year over year increase in bookings in 2020. The operating initiatives we put in place to improve productivity and scale our business took hold in the second half of 2020 resulting in a significant increase in profitability and increased margin expansion.

**The Proposed Transaction**

26. On February 8, 2021, Glu and Electronic Arts issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> **REDWOOD CITY, February 8, 2021 - Electronic Arts Inc. (NASDAQ: EA)**, a global leader in interactive entertainment, and **Glu Mobile Inc. (NASDAQ: GLUU)**, a leading global developer and publisher of mobile games including Design Home, Covet Fashion, and MLB Tap Sports Baseball, have entered into a definitive agreement under which Electronic Arts will acquire Glu Mobile. Under the terms of

the agreement, EA will acquire Glu for $2.1 billion in enterprise value. Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing a 36% premium to Glu's closing share price on February 5, 2021. Upon closing, the acquisition will be immediately accretive to Electronic Arts' total net bookings, and is expected to grow underlying profitability beginning in its first year.

The acquisition will immediately add significant scale to Electronic Arts' mobile games business. The combination of Electronic Arts and Glu creates a leading mobile product portfolio that includes more than 15 top live services across fast- growing genres with a combined $1.32 billion in bookings over the last twelve months. Bringing together the best-in-class mobile development teams at Glu and Electronic Arts' mobile business, with a collective portfolio of powerful IP in sports, lifestyle, RPG, casual and other genres, and leveraging Electronic Arts' marketing and distribution strength to generate global reach, the combined organization will build on EA's network of 430 million players, including more than 100 million monthly active players in mobile, and expand to new audiences and demographics all over the world.

"Our acquisition of Glu combines amazing teams and deeply-engaging products to create a mobile games leader with proven expertise across many fast-growing genres," said Andrew Wilson, CEO of Electronic Arts. "Mobile continues to grow as the biggest gaming platform in the world, and with the addition of Glu's games and talent, we're doubling the size of our mobile business. With a deep IP portfolio and an expanding global audience, we'll deliver more exciting experiences for our players and drive further growth for Electronic Arts."

"This transaction is the culmination of the tremendous work of the Glu team to deliver world-class interactive experiences for our players, while driving business momentum that has led to strong financial and operational results. It represents a terrific outcome for all of our stockholders and other key constituents," said Nick Earl, CEO of Glu. "As part of Electronic Arts, we will continue capitalizing on the opportunities ahead in the expanding mobile gaming industry."

The strategic rationale for the acquisition includes:

- **Creating a Leading Mobile Portfolio Across Key Genres**. The complementary nature of Electronic Arts and Glu's successful products will create a portfolio that spans many of the biggest and most popular genres of mobile games, including sports, RPG, lifestyle, casual, and mid-core games. The combined organization will have a demographically diverse audience, with significant opportunities for franchise and market expansion.

- **Expanding Successful, Scalable Live Services**. Both Electronic Arts and Glu have proven success creating mobile live service games that deeply engage large communities over many years and deliver strong recurring revenue. The combined expertise of the two organizations unlocks potential for further success. Glu's franchises like Design Home, Covet Fashion, and MLB Tap Sports Baseball will benefit from Electronic Arts' global licensing and

distribution capabilities to bring them to new markets and more players.  Glu's expertise in building and monetizing sports and casual mobile games, combined with Electronic Arts' industry-leading IP in sports and beyond, will accelerate the creation of exciting new experiences for broad audiences.

- **Experienced Creative Leadership & Enhanced Team Capabilities**.  Glu brings a talented team including more than 500 mobile game developers (and nearly 800 total employees), adding significant scale to Electronic Arts' mobile-focused organization.  Glu's creative leaders are established and well-known to Electronic Arts, with similar focus on creating highly successful mobile games with longevity.  The combination of proven mobile leadership, deeply talented teams, genre expertise, long-running franchises and IP, and technology across the two organizations will be a catalyst to delivering new experiences and further growth.

- **Accelerating Growth**.  The combination of Electronic Arts and Glu will be a mobile growth engine.  With strong, recurring revenue across a leading portfolio of live services, strength in key mobile genres, a deep roster of owned and licensed IP, access to a large-scale and growing player network, and ability to reach into new regions and markets, the acquisition will be immediately accretive to EA's total net bookings and is expected to grow underlying profitability beginning in its first year.

\* \* \*

**Details on the Proposed Transaction**

The board of directors of each of Electronic Arts and Glu Mobile have approved the transaction and the Glu board recommends that Glu stockholders approve the transaction and adopt the merger agreement.  Under the terms of the agreement, Glu stockholders will receive $12.50 in cash for each share of Glu stock, representing an equity value of $2.4 billion, and a total enterprise value of $2.1 billion including Glu's' net cash of $364 million.  The transaction is anticipated to close in the quarter ending June 30, 2021, subject to approval by the Glu stockholders, the receipt of required regulatory approvals and other customary closing conditions.

**Insiders' Interests in the Proposed Transaction**

28.     Glu insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Glu.

29. Pursuant to the Merger Agreement, all outstanding Company options and restricted stock units ("RSUs") will vest and convert into the right to receive the Merger Consideration. As of March 19, 2021, the estimated aggregate value of Glu options and RSUs held by the Company's named executive officers is approximately $81,454,323.

30. In addition, if they are terminated in connection with the Proposed Transaction, Glu's named executive officers stand to receive substantial cash severance payments as set forth in the following table:

| Named Executive Officer | Cash($)(1) | Equity Awards($)(2) | Heath Insurance Premiums($)(3) | Total($) |
|---|---|---|---|---|
| Nick Earl | $950,000 | $17,490,234 | $20,467 | $18,460,701 |
| Eric R. Ludwig | $750,000 | $ 9,085,619 | $33,607 | $ 9,869,226 |
| Chris Akhavan | $280,000 | $ 2,912,763 | $ 5,332 | $ 3,198,095 |
| Becky Ann Hughes | $342,000 | $ 3,633,826 | $ 7,598 | $ 3,983,424 |
| Scott J. Leichtner | $258,750 | $ 2,402,176 | $11,514 | $ 2,672,440 |

**The Proxy Statement Contains Material Misstatements or Omissions**

31. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Glu's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's financial projections and the data and inputs underlying the financial

valuation analyses that support the fairness opinions provided by Goldman and Morgan Stanley; and (ii) potential conflicts of interest faced by the Company's additional financial advisor, UBS.

***Material Omissions Concerning Glu's Financial Projections and Goldman's and Morgan Stanley's Financial Analyses***

33. The Proxy Statement omits material information regarding Glu's financial projections.

34. For example, the Proxy Statement fails to disclose the line items underlying the Company's bookings and adjusted EBITDA.

35. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisors in support of their fairness opinions.

36. Additionally, the Proxy Statement describes Goldman's and Morgan Stanley's fairness opinions and the various valuation analyses performed in support of their opinions. However, the description of Goldman's and Morgan Stanley's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Glu's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's and Morgan Stanley's fairness opinion in determining whether to vote in favor of the Proposed Transaction or seek appraisal.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of Glu's terminal values; (ii) quantification of the individual inputs and assumptions underlying the discount rates of 7.5% to 9.0% and perpetuity growth rates of 1.0% to 3.0% that Goldman utilized in performing the analysis; and (iii) the fully diluted shares of Glu common stock.

38. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose quantification of the inputs and assumptions underlying the discount rate of 8.5%.

39. With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) quantification of the individual inputs and assumptions underlying the discount rate of 8.8% used in the analysis; and (ii) the outstanding shares of the Company's common stock on a fully-diluted basis.

40. With respect to Morgan Stanley's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) quantification of Glu's terminal values; (ii) quantification of the individual inputs and assumptions underlying the discount rates of 7.8% to 9.8% that Goldman utilized in performing the analysis; (iii) the implied perpetuity growth rates resulting from the analysis; and (iv) the fully diluted shares of Glu common stock.

41. Without such undisclosed information, Glu stockholders cannot evaluate for themselves whether the financial analyses performed by Goldman and Morgan Stanley were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that positive fairness opinions could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Goldman's and Morgan Stanley's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction or seek appraisal.

42. The omission of this information renders the statements in the "Financial Projections," "Opinion of Goldman Sachs & Co. LLC" and "Opinion of Morgan Stanley & Co. LLC" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning UBS's Potential Conflicts of Interest*

43. The Registration Statement fails to disclose material information concerning potential conflicts of interest faced by UBS.

44. According to the Proxy Statement, Glu engaged UBS as a financial advisor in addition to Goldman and Morgan Stanley. The Proxy Statement, however, fails to disclose what work, if any, UBS performed for Glu after the Company entered into an engagement letter with UBS on November 6, 2020. *See* Proxy Statement at 33.

45. Additionally, the Proxy Statement fails to disclose whether UBS performed any financial analyses for the Board or Glu's management.

46. Moreover, the Proxy Statement fails to disclose: (i) the compensation UBS received pursuant to its engagement; (ii) the amount of UBS's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether UBS has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by UBS for providing such services.

47. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

48. The omission of this material information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Glu will be

unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations
of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Goldman and Morgan Stanley, and the potential conflicts faced by UBS. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction or seek to exercise their appraisal rights.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Claims Against the Individual Defendants for
Violation of Section 20(a) of the Exchange Act**

56. Plaintiff repeats all previous allegations as if set forth in full.

57. The Individual Defendants acted as controlling persons of Glu within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Glu, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

60.   In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61.   By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

62.   As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Glu's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Glu, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Glu stockholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

- 14 -

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff demands a trial by jury on all claims and issues so triable.

| | |
|---|---|
| Dated: March 31, 2021 | **WEISSLAW LLP** |
| | By: <u>*/s/ Joel E. Elkins*</u> |
| | Joel E. Elkins |
| | 9100 Wilshire Blvd. #725 E. |
| | Beverly Hills, CA 90210 |
| | Telephone: 310/208-2800 |
| | Facsimile: 310/209-2348 |
| | -and- |
| | Richard A. Acocelli |
| | 1500 Broadway, 16th Floor |
| | New York, NY 10036 |
| | Telephone: 212/682-3025 |
| | Facsimile: 212/682-3010 |
| | |
| | *Attorneys for Plaintiff* |